# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMO BANK N.A.,<br><br>        Plaintiff,<br><br>    v.<br><br>KULAR TRANSPORTATION INC., et al.,<br><br>        Defendants. | Case No. 1:24-cv-01568-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT WITH REDUCTION IN ATTORNEY'S FEES<br><br>ORDER REQUIRING SERVICE ON DEFENDANT WITHIN THREE DAYS<br><br>(ECF No. 11)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Pending before the Court is Plaintiff BMO Bank N.A.'s ("Plaintiff") motion for default judgment. Plaintiff seeks default judgment against Defendants Kular Transportation Inc. and Lakhwinder Singh (collectively, "Defendants") relating to Defendants' defaults on contracts involving vehicles. No opposition to the motion was filed. On May 28, 2025, the Court held a hearing on the motion. Ken Ichi Ito, Esq., appeared on behalf of Plaintiff, and no appearance was made on behalf of Defendants. Having considered the moving papers, the declarations and exhibits attached thereto, Defendants' nonappearance at the hearing, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Plaintiff's motion for default judgment, subject to a reduction in the requested attorneys' fees.

# I.

# BACKGROUND[1]

### A.     The Loan Agreements

#### 1.  Agreement 62001 – January 17, 2022

On January 17, 2022, Plaintiff and Defendant Kular Transportation Inc. ("Kular") entered into a loan and security agreement with contract number ending 62001 ("Agreement 62001"), pursuant to which Plaintiff agreed to finance Kular's purchase of certain vehicles for use in Kular's transportation business ("62011 Vehicles"). (ECF No. 1, Ex. 1.)  Defendant Kular agreed to pay Plaintiff $236,205.00, including interest pursuant to the terms and conditions in Agreement 62001. (Id.)

#### 2.  Agreement 83001 – September 7, 2022

On September 7, 2022, Plaintiff and Defendant Kular entered into a loan and security agreement with contract number ending 83001 ("Agreement 83001"), pursuant to which Plaintiff agreed to finance Kular's purchase of certain vehicles for use in Kular's transportation business ("83001 Vehicles"). (Id. at Ex. 2.)  Defendant Kular agreed to pay Plaintiff $245,665.20, including interest pursuant to the terms and conditions in Agreement 83001. (Id.)

#### 3.  Agreement 03001 – December 28, 2022

On December 28, 2022, Plaintiff and Defendant Kular entered into a loan and security agreement with contract number ending 03001 ("Agreement 03001"), pursuant to which Plaintiff agreed to finance Kular's purchase of certain vehicles for use in Kular's transportation business ("03001 Vehicles"). (Id. at Ex. 3.)  Defendant Kular agreed to pay Plaintiff $276,446.88, including interest pursuant to the terms and conditions in Agreement 03001. (Id.)

### B.     The Guaranties

In connection with Agreements 62001, 83001, and 03001, Defendant Singh ("Singh") executed continuing guaranties, respectively, on January 17, 2022, September 7, 2022, and December 28, 2022. (Id. at Ex. 4.)  By signing the continuing guaranties, Defendant Singh

---

[1] Background facts are derived from the allegations in the Complaint as well as the exhibits annexed therein. (ECF No. 1.)

2

guaranteed the full and timely performance of all of Defendant Kular's present and future liabilities to Plaintiff. (Id.)

### C. The Security Interest

In consideration for entering into the above-described agreements, Defendant Kular granted Plaintiff a first-priority security interest in the respective vehicles. The vehicles consist of the following:

<u>62001 Vehicles</u>

1. 2019 Vanguard Refrigerated Vans, with 2018 Thermo King, Model S-600; VIN: 527SR5327KL018773; Serial No. 6001278835; and

2. 2019 Vanguard Refrigerated Vans, with 2018 Thermo King, Model S-600; VIN: 527SR532XKL013578; Serial No. 6001275006

<u>83001 Vehicle</u>

1. 2023 Freightliner, Model PT126SLPG; VIN: 3AKJHHDR3PSUJ4190

<u>03001 Vehicles</u>

1. 2023 Utility Refrigerated Vans, with 2022 Thermo King, Model S-600; VIN: 3UTVS2531P8885007; Serial No. 6001380867; and

2. 2023 Utility Refrigerated Vans, with 2022 Thermo King, Model S-600; VIN: 3UTVS253398885008; Serial No. 6001380868

Plaintiff perfected its security interest in the vehicles by recording its liens on the certificate of title for each vehicle. (ECF No. 1, Ex. 5.)

### D. Default by Defendants

Defendants are in default under the Agreements and Guaranties for their failure to pay the amounts due thereunder. (ECF No. 1, ¶ 15.) Defendant Kular failed to make payments due on the Agreements commencing June 1, 2024, as to Agreement 62001 and Agreement 03001, and July 7, 2024, as to Agreement 83001. (Id. at ¶ 16.) Pursuant to the Agreements, the entire amounts due have been accelerated. (Id. at ¶ 17.) As of the respective dates of default, the principal amount due and owing after acceleration is as follows:

- Agreement 62001:   $124,568.77

1        •   Agreement 83001:     $144,606.02

2        •   Agreement 03001:     $177,833.75

(Id.) At the time of default, accrued and unpaid interest due and owing under the Agreements is as follows:

       •   Agreement 62001:     $0.00

       •   Agreement 83001:     $2,248.72

       •   Agreement 03001:     $0.00

(Id. at ¶ 18.) Under the Agreements, calculated from the respective dates of default to the dates of acceleration, accrued and unpaid interest due and owning under the Agreements is as follows:

       •   Agreement 62001:     $5,130.00

       •   Agreement 83001:     $5,667.30

       •   Agreement 03001:     $9,122.85

(Id. at ¶ 19.)

     Defendants are obligated to pay interest on all unpaid amounts at the default interest rate of 1.5% per month (18% per annum) or the maximum rate not prohibited by applicable law. (Id. at ¶ 20.) The Agreements were accelerated on November 22, 2024, and the daily default rates of interest accruing since then are as follows:

       •   Agreement 62001:     $62.28

       •   Agreement 83001:     $72.30

       •   Agreement 03001:     $88.92

(Id.) Under the Agreements, Defendants are obligated to pay late charges and other fees. (Id. at ¶ 21.) As of the respective dates of default, late charges have accrued under the Agreements as follows:

       •   Agreement 62001:     $1,181.04

       •   Agreement 83001:     $1,113.80

       •   Agreement 03001:     $1,151.88

(Id. at ¶ 22.)

     Under the Agreements, Defendants are obligated to pay all expenses of retaking, holding,

4

1 preparing for sale and selling the Vehicles. (Id. at ¶ 23.) In addition, Defendants are obligated to
2 pay the attorney's fees and costs incurred by Plaintiff in enforcement of tis rights, including
3 expenses of filing and prosecuting a lawsuit. (Id. at ¶ 24.)
4   By letters dated December 5, 2024, Plaintiff noticed Defendants of their defaults under the
5 Agreements, as well as Plaintiff's election to accelerate the loans evidenced by the Agreements.
6 (Id. at ¶ 25.) Additionally, Plaintiff demanded that Defendants pay the amounts due under the
7 Agreements and surrender the Vehicles. (Id.; Id. at Ex. 6.) Despite demand, Defendants failed
8 and refused to pay the amount due and owing under the Agreements and Guaranties. (Id. at ¶ 26.)
9   Under the Agreements, Plaintiff has a right to enter any premises and take possession of
10 the Vehicles. (Id. at ¶ 27.) As of the date Plaintiff filed its complaint, the collateral Vehicles
11 remained in Defendants' possession or control. (Id. at ¶ 28.) Plaintiff has performed any and all
12 conditions and obligations required by it under the Agreements and Guaranties.
13   On December 19, 2024, Plaintiff filed this action against Defendants, asserting claims of
14 specific performance, claim and delivery, breach of contract, seeking damages and injunctive
15 relief. (ECF No.1, ¶¶ 31-63.) Defendants did not respond to the complaint. On February 27,
16 2025, Plaintiff requested an entry of default be entered against Defendants (ECF No. 8); the Clerk
17 issued an entry of default the same day (ECF No. 9.)
18   On April 9, 2025, Plaintiff filed the instant motion for default judgment against Defendants.
19 (ECF No. 11.) Defendant did not file an opposition to the motion nor otherwise appear in this
20 action. The deadline to file an opposition has expired. See L.R. 230(c).
21   In the motion, Plaintiff requests default judgment in the total amount of $501,834.37,
22 which includes a request for attorney's fees in the amount of $3,835.00, court costs of $565.24,
23 repossession fees of $40.00. (ECF No. 11, p. 14.) Plaintiff also seeks immediate possession of the
24 following unrecovered collateral vehicle:
25   62001 Vehicle
26   2019 Vanguard Refrigerated Vans, with 2018 Thermo King, Model S-600; VIN:
27     527SR5327KL018773; Serial No. 6001278835
28 (Id. at p. 15.) Plaintiff has repossessed the other Vehicles and spent $40.00 in repossession or

5

1  title searches. (Id. at ¶ 17.)

2  On May 28, 2025, the Court held a hearing with the courtroom open to the public. (ECF
3  No. 17.)

## II.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Rule") 55, obtaining a default judgment is a two-step process. Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise. Fed. R. Civ. P. 55(a). After entry of default, a plaintiff can seek entry of default judgment. Fed. R. Civ. P. 55(b). Rule 55(b)(2) provides the framework for the Court to enter a default judgment:

> (b) Entering a Default Judgment.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
>
> (B) determine the amount of damages;
>
> (C) establish the truth of any allegation by evidence; or
>
> (D) investigate any other matter.

Id.

The decision to grant a motion for default judgment is within the discretion of the court. PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987). The Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may consider in exercising its discretion: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's

1  substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; 2 (5) the possibility of a dispute concerning material facts; (6) whether the default was due to 3 excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure 4 favoring decisions on the merits.  Eitel, 782 F.2d at 1471-72.

5  Generally, once default has been entered, "the factual allegations of the complaint, except 6 those relating to damages, will be taken as true." Garamendi v. Henin, 683 F.3d 1069, 1080 (9th 7 Cir. 2012), quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977); see also Fed. R. 8 Civ. P. 8(b)(6). The amount of damages must be proven at an evidentiary hearing or through other 9 means. Microsoft Corp. v. Nop, 549 F. Supp. 2d 1233, 1236 (E.D. Cal. 2008). Additionally, 10 "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not 11 established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) 12 (internal citation omitted), superseded by statute on other grounds, Pub. L. No. 100-702, 102 Stat. 13 4669. The relief sought must not be different in kind or exceed the amount that is demanded in the 14 pleadings. Fed. R. Civ. P. 54(c).

## III.

## DISCUSSION

### A.   Service of Process

The Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment.  See Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992). "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc. (Direct Mail), 840 F.2d 685, 688 (9th Cir. 1988) (citations omitted). "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." Direct Mail, 840 F.2d at 688, quoting United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984). However, "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.'" Id., quoting Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986). "[A] signed return of service constitutes prima facie evidence of valid service which can be overcome

7

only by strong and convincing evidence." SEC v. Internet Solutions for Bus., Inc., 509 F.3d 1161, 1163 (9th Cir. 2007).

Plaintiff is suing both a corporate entity and an individual in this action. The complaint identifies Defendant Kular's principal place of business as located at 3504 N. Leanna Avenue, Fresno, California 93737. (ECF No. 1, ¶ 5.) Defendant Singh is the alleged owner, sole director, CEO, Secretary, and CFO of Kular Transportation Inc. (Id. at ¶ 7.) The Agreements identify Defendant Singh as the President of Kular Transpiration Inc. with a "Principal Residence/Chief Executive Office/Place of Business" at 3504 N. Leanna Avenue, Fresno, California 93737. (Id. at Exs. 1-3.)

1. Service on Defendant Kular

Federal Rule of Civil Procedure 4(h) governs service on a domestic corporation, partnership, or other unincorporated association that is subject to suit under a common name. Under 4(h), a plaintiff may serve a corporation by following state law for service of a summons on an individual or by delivering a copy of the summons and complaint to an officer or agent and by a mailing a copy of each to the defendant. Fed. R. Civ. P. 4(h)(1).

Under California law, as a substitute to personal delivery of a copy of the summons and complaint, service may be made on a corporation: (1) by leaving a copy of the summons and the complaint during usual office hours in the office of the corporation's agent for service of process, president, chief executive, vice president, secretary or assistant secretary, assistant treasurer, controller or chief financial officer, general manager, or another head of the corporation; (2) with a person "apparently in charge" of the office; and (3) "thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Code Civ. P. §§ 415.20(a), 416.10.

The proof of service indicates that Plaintiff served Defendant Kular with the summons and complaint on its agent, Lakhwinder Singh, by leaving a copy of the summons and complaint at the Kular business address, 3504 N. Leanna Avenue, Fresno, California 93737, with an employee/person apparently in charge, Khushi Sheema, on January 19, 2025. (ECF No. 6) The proof of service represents that the process server informed Khushi Sheema of the general nature

8

of the papers and, thereafter, mailed copies of the summons and complaint, as well as other documents, to the same address, to the attention of Lakhwinder Singh. (Id.)

  2. <u>Service on Defendant Singh</u>

Federal Rule of Civil Procedure 4(e) governs service on an individual. Under 4(e), a plaintiff may serve an individual within a judicial district of the United States by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

According to the proof of service on file, Defendant Singh was served by leaving a copy of the summons and complaint at the Kular business address, 3504 N. Leanna Avenue, Fresno, California 93737, with an employee/person apparently in charge, Khushi Sheema, on January 19, 2025. (ECF No. 7.) Thereafter, the summons and complaint were mailed to Defendant Singh at the same address. (Id.)

California law permits substituted service on an individual if a copy of the summons and complaint with reasonable diligence cannot be personally delivered by:

> by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, . . . in the presence of . . . a person apparently in charge of his or her office, place of business, . . . at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Code Civ. P. § 415.20(b).

Here, service was attempted at Defendant Singh's business address on three separate

9

1  occasions before substituted service was completed on the person apparently charge, identified as
2  Singh's spouse. (ECF No. 7, pp. 1, 3.) The summons and complaint were subsequently mailed to
3  Defendant Singh at the same address. (Id. at 5.)

4  Having considered the proofs of service, the Court finds that Defendants were adequately
5  served with the summons and complaint pursuant to Federal Rule of Civil Procedure 4.

**B.   The Eitel Factors Weigh in Favor of Default Judgment**

The Court finds that consideration of the Eitel factors weighs in favor of granting default judgment in favor of Plaintiff.

### 1.   Possibility of Prejudice to Plaintiff

The first factor considered is whether Plaintiff would suffer prejudice if default judgment is not entered. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant. Id.; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F. Supp. 2d 1197, 1200-01 (C.D. Cal. 2012). Plaintiff contends that denying judgment would prejudice Plaintiff because Defendants "refused to participate in the action and has made default judgment the sole avenue of relief available to Plaintiff." (ECF No. 11, p. 12.) The Court agrees that Plaintiff would be prejudiced if default judgment were not granted. Default has been entered against Defendants and Plaintiff has no other means to recover against them. This factor weighs in favor of default judgment.

### 2.   Merits of Plaintiff's Claims and Sufficiency of Complaint

The second and third Eitel factors, taken together, "require that a plaintiff state a claim on which the [plaintiff] may recover." PepsiCo, Inc., 238 F. Supp. 2d at 1175 (citations and internal quotations omitted). Notably, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007). Plaintiff's complaint alleges a breach of contract.

The loan agreements at issue provide that they will be subject to the laws of the State of Illinois. (Doc. 1, Ex. 1 ¶ 7.6; Ex. 2 ¶ 7.6; Ex. 3 ¶ 7.6.) In determining the enforceability of a choice-of-law provision in a diversity action, such as this one, a federal court applies the choice of law rules of the forum state, in this case California. Hatfield v. Halifax PLC, 564 F.3d 1177, 1182

1  (9th Cir. 2009). In California, "a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable 'if the chosen state has a substantial relationship to the parties *or the transaction or any other reasonable basis exists for the parties' choice of law*.'" 1–800–Got Junk? LLC v. Super. Ct., 189 Cal. App. 4th 500, 513-14 (2010), quoting Trust One Mortg. Corp. v. Invest Am. Mortg. Corp., 134 Cal. App. 4th 1302, 1308 (2005) (emphasis in original). There is a strong policy in favor of enforcing choice of law provisions. Id. at 513.

Plaintiff does not address the choice-of-law provisions. Instead, Plaintiff identifies only California's substantive law. (See ECF No. 10, p. 12.) However, because the elements of breach of contract in Illinois and California are identical, the Court need not determine which jurisdiction's law applies. First Am. Com. Bancorp, Inc. v. Vantari Genetics, LLC, No. 2:19-cv-04483-VAP-FFM, 2020 WL 5027990, at *3 n.1 (C.D. Cal. Mar. 12, 2020), citing Gallagher Corp. v. Russ, 309 Ill. App. 3d 192, 199 (1999). In California, "[t]o be entitled to damages for breach of contract, a plaintiff must plead and prove (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff." First Am. Com. Bancorp, 2020 WL 5027990, at *3, quoting Walsh v. W. Valley Mission Cmty. Coll. Dist., 66 Cal. App. 4th 1532, 1545 (1998). Under Illinois law, "[t]o succeed on a claim for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract, (2) the performance of its conditions by the plaintiff, (3) a breach by the defendant, and (4) damages as a result of the breach." Law Offices of Colleen M. McLaughlin v. First Star Fin. Corp., 357 Ill. Dec. 570, 583, 963 N.E.2d 968, 981 (Ill. Ct. App. 2011).

Here, Plaintiff alleges that Defendant Kular entered into the identified Agreements, has failed to perform under the Agreements by failing to make payments when those payments become due, and Plaintiff is entitled to contractual money damages under the Agreements. (ECF No. 1, ¶¶ 55-58.) Plaintiff also alleges that Defendant Singh entered into the identified Guaranties, has failed to perform under the Guaranties by failing to make payments when those payments became due, and Plaintiff is entitled to recover contractual money damages. (Id. at ¶¶ 60-62.)

The Court finds that Plaintiff's complaint sufficiently states a claim for breach of the Agreements and Guaranties, which weighs in favor of default judgment.

11

### 3. The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176. Here, Plaintiff seeks judgment in the amount of $447,008.54, which includes attorneys' fees in the amount of $3,835.00, and court costs in the amount of $565.24, and a repossession fee of $40.00. (ECF No. 11, p. 14.) The Court finds the amount at stake is not large, and it is proportional to the harm caused by Defendants' failure to repay the loan amounts. This factor therefore does not weigh against entry of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

The facts of this case are straightforward, and Plaintiff has provided the Court with well-pled allegations and a declaration with exhibits in support. Here, the Court may assume the truth of well-pled facts in the complaint following the Clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. Defendants' failure to file an answer in this case or a response to the instant motion further supports the conclusion that the possibility of a dispute as to material facts is minimal. See, e.g., Elektra Entm't Grp. Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). This factor therefore weighs in favor of default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that Defendant's default resulted from excusable neglect. PepsiCo, Inc., 238 F. Supp. 2d at 1177. Courts have found that where defendants were "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). Upon review of the record, the Court finds that the default was not the result of excusable neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Plaintiff adequately served Defendants with the summons and complaint. (ECF Nos. 6, 7.) Moreover, Plaintiff served Defendants with a copy of the request for entry of default, the motion for default judgment, along with the accompanying declarations of

1  Whitney Oliver and Ken I. Ito. (ECF Nos. 11, 12, 13.) Despite ample notice of this lawsuit and
2  Plaintiff's intention to seek a default judgment, Defendants have not appeared to date. Thus, the
3  record suggests that they have chosen not to defend this action, and not that the default resulted
4  from any excusable neglect. Accordingly, this factor weighs in favor of the entry of a default
5  judgment.

      6. <u>The Strong Presumption Favoring Decisions on the Merits</u>

"Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Defendants have not responded. Accordingly, the Court finds that this factor does not weigh against entry of default judgment.

Accordingly, upon consideration of the <u>Eitel</u> factors, the Court concludes that Plaintiff is entitled to default judgment against Defendants.

**C.**     **Requested Relief**

    1. <u>Damages</u>

The loan agreements at issue all provide that in the event of default by the debtor or guarantor, all indebtedness becomes immediately due and payable, Plaintiff is entitled to take possession of and dispose of the equipment and to have the debtor pay all interest and expenses incurred—including reasonable attorney's fees. (ECF No. 1, Ex. 1 ¶¶ 5.1-5.3; Ex. 2 ¶¶ 5.1-5.3; Ex. 3 ¶¶ 5.1-5.3.) As of the respective dates of default on the various agreements, Plaintiff declares that the principal amounts due and owing total $447,008.54 ($124,568.77 + $144,606.02 + $177,833.75). (ECF No. 12, Declaration of Whitney Oliver ("Oliver Decl."), ¶ 20.) At the time of default, accrued and unpaid interest due and owing under the agreements totaled $2,248.72 ($0.00 + $2,248.72 + $0.00). (<u>Id.</u> at ¶ 21.) Calculated from the respective dates of default to the dates of acceleration, the amount of accrued and unpaid interest due and owing under the Agreements is no less than $19,920.15 ($5,130.00 + $5,667.30 + $9,122.85). (<u>Id.</u> at ¶ 22.) Under

1  the Agreements, upon acceleration, Defendants are obligated to pay interest on all unpaid amounts
2  at the default interest rate of 1.5% per month (18% per annum) or the maximum rate not prohibited
3  by applicable law.  (Id. at ¶ 23.)  The Agreements were accelerated on November 22, 2024,
4  meaning the daily rates of interest accruing since the dates of acceleration are as follows:
5  Agreement 62001: $62.28; Agreement 83001: $72.30; Agreement 03001: $88.92.  (Id.)  As of the
6  respective dates of default, the amount of late charges have accrued to no less than $3,446.72
7  ($1,181.04 + $1,113.80 + $1,151.88).  (Id. at ¶ 25.)  Through acceleration, Plaintiff has incurred
8  $40.00 in repossession expenses or title searches.  (Id. at ¶ 26.)

9        Calculated as of April 8, 2025, the amount due and owing under the Agreements, not
10 including attorneys' fees and expenses, is an amount not less than $497,434.13. (Id. at ¶ 34(d).)
11 These requested amounts are supported by declaration.  (ECF No. 12.)  The Agreements and
12 declaration constitute sufficient proof that Plaintiff has sustained damages for the breaches of the
13 Agreements.  Plaintiff therefore seeks judgment in the amount of $497,434.13, plus postjudgment
14 interest and attorneys' fees and costs, against Defendants.

15       2.     <u>Attorney's Fees and Costs</u>

16       Plaintiff seeks a total amount of $3,835.00 in attorney's fees and $565.24 in court costs.
17 (ECF No. 13, Declaration of Ken I. Ito ("Ito Decl."), ¶¶ 9, 10.)  California and Illinois both enforce
18 contractual provisions allowing the collection of reasonable attorneys' fees.  Cal. Civ. Proc. Code
19 § 1021 ("Except as attorney's fees are specifically provided for by statute, the measure and mode
20 of compensation of attorneys and counselors at law is left to the agreement, express or implied, of
21 the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter
22 provided."); <u>Gil v. Mansano</u>, 121 Cal. App. 4th 739, 742-43 (2004); <u>Cap. One Auto Fin., Inc. v.</u>
23 <u>Orland Motors, Inc.</u>, No. 09-cv-4731, 2012 WL 3777025, at *3 (N.D. Ill. Aug. 27, 2012) ("Illinois
24 recognizes the American Rule that 'absent a statute or contractual provision, a successful litigant
25 must bear the burden of his or her own attorney's fees.'").  Under the Agreements, Defendant
26 Kular is obligated to pay the attorney's fees and costs incurred by Plaintiff in the enforcement of
27 its rights, including expenses of filing and prosecuting this action.  (Doc. 1, Ex. 1, ¶ 5.2, Ex. 2, ¶
28 5.2; Ex. 3, ¶5.2; <u>see</u> ECF No. 12, Oliver Decl., ¶ 27.)  Plaintiff is therefore entitled to recovery of

1  attorneys' fees and costs.

2  To determine a reasonable attorneys' fee, or "lodestar," the starting point is the number of hours reasonably expended multiplied by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). In considering what constitutes a reasonable hourly rate, the Court looks to the prevailing market rate in the relevant community. Blum v. Stenson, 465 U.S. 886, 895 (1984). The "relevant community" for the purposes of the lodestar calculation is generally the forum in which the district court sits. Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013). Thus, when a case is filed in the Eastern District of California, this district "is the appropriate forum to establish the lodestar hourly rate . . . ." See Jadwin v. County of Kern, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011).

a. Reasonable Hourly Rate

Hourly rates for attorney's fees awarded in the Eastern District of California range from $200 to $750, with hourly rates exceeding $600 reserved for attorneys who have been practicing approximately 30 years. See, e.g., BMO Bank N.A. v. Cheema, No. 1:24-cv-00634-SAB, 2024 WL 4357004, at *9 (E.D. Cal. Oct. 1, 2024), F&R adopted, 2024 WL 4873520 (E.D. Cal. Nov. 22, 2024) (awarding hourly rate of $325 to attorney with more than 28 years litigation experience); Olguin v. FCA US LLC, No. 1:21-cv-1789-JLT-CDB, 2024 WL 4012103, at *7 (E.D. Cal. Aug. 30, 2024) (awarding hourly rates of $525 for attorneys practicing more than 20 years, $500 for attorneys practicing between 18 and 19 years, $450 to attorney practicing for approximately 13 years, $400 to attorney with 7-10 years of experience, $300 to attorney practicing about 6 years, $275 to attorney practicing about 4 years, and $250 for attorney practicing approximately 2 years); Owen v. Hyundai Motor Am., No. 2:22-cv-00882-KJM-CKD, 2024 WL 3967691, at *4 (E.D. Cal. Aug. 28, 2024) (finding typical rate for attorneys who have been practicing for more than ten years but less than fifteen years is between $350 and $375). Plaintiff's counsel was admitted to practice in California in 2011 and has more than 13 years of experience. (ECF No. 13, Ito Decl., ¶ 9.) Attorney Ito is seeking $325.00 per hour for his work in this matter. Given this information, the Court finds Attorney Ito's hourly rate of $325.00 is reasonable.

///

         b.  Hourly Reasonably Expended

According to the declaration of Attorney Ito and the corresponding exhibited invoice, Attorney Ito has stated that he has expended 8.80 hours of work in this matter. (See id. at ¶ 5; id. at Ex. 10.) However, upon review of the accompanying exhibit, Attorney Ito has only supported 2.50 hours of attorney's fees. (ECF No. 11, p. 7.) At the hearing, the Court inquired whether Attorney Ito would like to file a supplemental declaration with supporting exhibit, but Attorney Ito stated that he would waive any further attorney's fees over 2.50 hours. Thus, upon review of the declaration and exhibited invoice, the Court finds 2.50 hours to be reasonable and supported. The Court will recommend a reduced attorney's fee award of $812.50

In addition, Attorney Ito stated in his declaration that to "prepare this Motion for Default Judgment, and assuming there is no need for an appearance for this Motion for Default Judgment, it is anticipated and expected that it will take minimum of 3 hours, respectively, at a rate of $325.00 for a total of $975.00." (Id. at ¶¶ 7, 8.) However, the District Court has previously rejected Attorney Ito's "anticipated" additional hours as not supported by evidence. BMO Harris Bank, N.A. v. Lala Trucking Inc., No. 1:24-cv-01114-JLT-BAM, 2025 WL 1322781, at *2 (E.D. Cal. May 7, 2025). At the hearing, Attorney Ito also stated that he would waive any opportunity to support these anticipated three hours. Accordingly, "the fee award [will be] limited to the established and documented time." Id.

Based on the foregoing, the Court will therefore recommend awarding Plaintiff $812.50 for 2.50 hours of work by Attorney Ito at a rate of $325.00 per hour in attempting to collect and enforce the Agreements.

In addition to attorneys' fees, Plaintiff seeks the recovery of court costs in the amount of $565.24, consisting of costs for the Court filing fee and service of process. (ECF No. 12, Oliver Decl., ¶ 36; ECF No. 13, Ito Decl., ¶ 10.) The Court finds these costs to be reasonable.

///
///
///
///

V.

**CONCLUSION AND RECOMMENDATION**

The Eitel factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

Based upon the foregoing, the Court HEREBY RECOMMENDS that:

1. Plaintiff's motion for default judgment (ECF No. 11) be GRANTED;

2. Default judgment be entered in favor of Plaintiff BMO Bank N.A. and against Defendants Kular Transportation Inc. and Lakhwinder Sing in the amount of $497,434.13, plus postjudgment interest;

3. Defendants be ordered to pay Plaintiff an amount of $1,377.74, which represents the reasonable attorneys' fees of $812.50 and costs of $565.24 incurred in enforcing the Agreements and in collection of the amounts due; and

4. Plaintiff be awarded possession of the Vehicle listed below, and Defendants are directed to specifically perform their obligations under the Loan Documents, and to return and/or allow Plaintiff to take possession of the Vehicle. Upon recovery and sale of the Vehicles in a commercially reasonable manner, the money judgment entered herein will be credited with the net sales proceeds.

   62001 Vehicle: 2019 Vanguard Refrigerated Vans, with 2018 Thermo King, Model S-600; VIN: 527SR5327KL018773; Serial No. 6001278835

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to this findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014),

1  citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

2      IT IS FURTHER ORDERED that Plaintiff shall serve a copy of this findings and recommendations on Defendants within three (3) days of entry.

IT IS SO ORDERED.

Dated: **May 28, 2025**

STANLEY A. BOONE
United States Magistrate Judge